FILED
2025 FEB -3 AM 11:44
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **TARUN N. SURTI, Pro Se** | |
| **Plaintiff,** | |
| **v.** | **Case No.** 3:25-cv-0122 |
| **FLEET ENGINEERS, INC, DIVISION OF TRAMEC SLOAN** | **Hon.** |
| **Defendant.** | |

**COMPLAINT FOR PATENT INFRINGEMENT AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP (JURY TRIAL DEMANDED)**

**COMPLAINT**

NOW COMES Plaintiff, Tarun N. Surti, proceeding pro se, and hereby files his complaint against Defendant Fleet Engineers, Inc., a Division of TRAMEC SLOAN. ("Fleet Engineers") (collectively referred to as "Defendants"). Plaintiff states as follows:

## I. NATURE OF THE ACTION

1. This action is instituted pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaratory judgment that United States Patent No. RE 44,755 (formerly 8,146,949) (hereinafter, the "'755 Patent") is valid and enforceable, following a finding by the Court of Appeals for the Federal Circuit (CAFC) that Defendant Fleet Engineers has **again willfully infringed** the '755 Patent through the manufacture, sale, and distribution of their newly designed Aero-Flap brand mud flaps.

This action arises under the patent laws of the United States, Title 35 of the United States Code, and includes claims for tortious interference with business relationships under Tennessee common law. In the course of prior patent litigation, Defendant has submitted

false and misleading statements to the Court and to relevant authorities. These statements were made with the knowledge that they were materially false, and were intended to deceive the Court, opposing counsel, and the Patent Office. Specifically, the Defendant's actions constitute a fraudulent misrepresentation of facts that directly impacted the proceedings, and these false statements were made with the deliberate intent to mislead and obstruct justice.

The Defendant's conduct in submitting these fraudulent statements is tantamount to perjury, as they were made under oath or in a sworn declaration, knowing that the statements were false at the time of submission. The Defendant's actions not only undermine the integrity of the litigation process but also demonstrate a willful disregard for the truth, thereby prejudicing the Pro Se Plaintiff's ability to fairly litigate the patent infringement claims.

This conduct constitutes an egregious abuse of the judicial process and warrants appropriate legal remedies, including sanctions or additional claims for fraud. The Defendant's actions threaten the fairness of the judicial system and should be addressed with the utmost seriousness to deter such conduct in future cases.

Plaintiff seeks injunctive relief, damages, and any other appropriate remedies for Defendant's second time unauthorized manufacture, use, sale, and/or offer for sale of products that infringe upon Plaintiff's patented invention, U.S. Patent No. '755, as well as for Defendant's willful interference with Plaintiff's business relationships.

## II. JURIDICTION AND VENUE

2. This action arises under the patent laws of the United States, specifically 35 U.S.C. §§ 271 and 281, et seq. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as the action arises under the patent laws of the United States. Additionally, the Court has supplemental jurisdiction over the state law claim for tortious

interference under 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendants, and venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement within this district. Defendants have transacted business in, had substantial contacts with, and entered into contractual relationships with Plaintiff in this district.

4. Venue is also proper in this judicial district because Plaintiff resides in this district, in accordance with 28 U.S.C. § 1391(b)-(c).

## III. THE PARTIES

5. Plaintiff, Tarun N. Surti, proceeding pro se, is an individual residing in Davidson County, Tennessee. Plaintiff is the sole owner of all rights, title, and interest in and to United States Patent No. RE 44,755 (the "'755 Patent"), the V-Flap brand name, the V-Flap website, its associated email address, and the exclusive manufacturing and marketing rights to V-Flap brand mud flaps.

6. Defendant, Fleet Engineers, Inc., a division of Tramec Sloan, is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business located in Muskegon, Michigan. Defendant is engaged in the business of manufacturing, selling, and distributing infringing Aero-Flap brand mud flaps, as well as other truck parts.

## GENERAL ALLEGATIONS

## IV. THE PATENT-IN-SUIT

7. On April 03, 2012, the United States Patent and Trademark Office duly issued United States Patent No. 8,146,949, titled "Mudflap," to Plaintiff. A true and correct copy of the '949 Patent is attached hereto as (See Surti Exhibit-1, Page Nos. 10002-10010).

8. On February 11, 2014, the United States Patent and Trademark Office duly reissued United

States Patent No. RE 44,755, titled "Mudflap," to Plaintiff. A true and correct copy of the '755 Patent is attached hereto as (See Surti Exhibit-2, Page Nos. 10012-10021).

9. The '755 Patent is valid, enforceable, and was issued in full compliance with 35 U.S.C. § 101 et seq.

10. Plaintiff is the sole and exclusive owner of all rights, title, and interest in and to the '755 Patent, including the right to sue for past, present, and future infringement of said patent.

## V. PLAINTIFF'S EXCLUSIVE RIGHTS

11. In addition to owning the '755 Patent, Plaintiff is the sole and exclusive owner of the V-Flap website, the V-Flap brand name, and the exclusive rights to the manufacturing and distribution of V-Flap brand mud flaps.

12. Plaintiff has invested substantial time, resources, and effort into the development, marketing, and distribution of the V-Flap brand mud flaps, which are protected by the '755 Patent.

13. Plaintiff's exclusive rights to the V-Flap brand and its associated intellectual property are vital to his business operations and have been unlawfully infringed upon and interfered with by Defendant.

## VI. DEFENDANT'S USE OF CONFIDENTIAL INFORMATION

14. Prior to the issuance of the '755 Patent, Plaintiff disclosed confidential information, including the patent application, to Defendant Fleet Engineers, Inc. through Mudguard Technology, pursuant to a Confidentiality and Non-Disclosure Agreement (the "NDA"). A true and correct copy of the NDA is attached hereto as (SEE Surti Exhibit-3, PageID 10024-10027).

15. The NDA was executed so Surti, the exclusive owner of the '755 Patent and associated trade secrets, could personally address Fleet Engineers' concerns regarding the potential infringement of Andersen Patent No. 6,851,717, and to explain why and how Surti's '755

patented design does not infringe upon the Andersen patent. (SEE Surti Exhibit-3, PageID 10023)

16. The NDA expressly prohibited Defendant from using or disclosing Plaintiff's confidential information for any purpose other than to evaluate a potential business relationship.

17. On May 19, 2010, Fleet Engineers confirmed that their patent attorney was evaluating Surti's '755 Patent in relation to Andersen's '717 Patent for potential infringement. (SEE Surti Exhibit-4, Page No. 10029)

18. On May 27, 2010, Fleet Engineers confirmed the informal opinion of their patent attorney, which was favorable to Surti's position. (SEE Surti Exhibit-4, Page No. 10030)

19. After Fleet's patent attorney confirmed that Surti's '755 design could provide protection against Andersen's claim of infringement of his '717 patent, Fleet, in violation of the Non-Disclosure Agreement (NDA), utilized Plaintiff's confidential information, including mud flap drawings and confidential knowledge derived from Plaintiff's explanation and unpublished patent application, to develop and manufacture Aero-Flap brand mud flaps that infringe upon Plaintiff's patent rights.

20. Defendant's unauthorized use of Plaintiff's confidential information demonstrates bad faith and intentional misconduct, further supporting Plaintiff's claims for willful infringement and entitlement to enhanced damages.

## VII. FACTUAL BACKGROUND

21. The '755 Patent pertains to Surti's proprietary two-stage separation system within a channel, specifically designed to permit the passage of air through openings while effectively preventing the passage of water and debris. This is accomplished through the channel design and the size of the openings, which are smaller than the channel itself. Consequently, water and debris strike the bottom walls of the channel between the sidewalls and around the slotted

openings, causing them to be stopped and redirected toward the ground.

22. Defendant Fleet Engineers has manufactured, used, sold, and/or offered for sale their newer Aero-Flap brand mud flaps that incorporate the '755 patented invention, without Plaintiff's authorization.

23. Defendant's infringing products include, but are not limited to, the newly developed Aero-Flap brand mud flaps, part numbers 033-0850, 033-08002, and 033-08004. These products specifically infringe upon Claim 19 of the '755 Patent, which recites: "A mudflap for a vehicle comprising a vertically extending flap mounted at an upper edge behind a vehicle wheel and extending downwardly therefrom, the flap comprising a plurality of laterally spaced channels on a front side thereof, the channels having rear walls at the rear sides of the channels and spaced sidewalls at the sides of the channels, the rear walls having slots formed therein that extend through the rear walls of the channels, the slots having side edges that are spaced away from the sidewalls of the channels such that water flowing rearwardly through the mudflap along the channel sidewalls strikes the rear walls of the channels at the side edges and is deflected by the side edges.".





| | | |
|---|---|---|
| *Figure 1*<br>*Fleet Aero-Flap*<br>*P/N 033-08050* | *Figure 2*<br>*Fleet Aero-Flap*<br>*P/N 033-08002* | *Figure 3*<br>*Fleet Aero-Flap*<br>*P/N 033-08004* |

24. Defendant has had actual and constructive knowledge of the '755 Patent since at least February 11, 2014 when plaintiff was provided with notice and 8,146,949 patent since April 2010 when Plaintiff was provided copy of the patent application.

25. Notwithstanding such knowledge, Defendant has continued to willfully, deliberately, and with reckless disregard, infringe upon the '755 Patent, thereby demonstrating a disregard for Plaintiff's patent rights.

## VIII. PRIOR LITIGATION AND DEFENDANT'S REFUSAL TO COMPLY

26. In a prior action, dated June 8, 2017, before the U.S. District Court for the Western District (Case No. 1:12-CV-1143), Plaintiff prevailed on the validity of the claims related to the '755 Patent, including claim 19, against Defendant. (See Surti Exhibit-5, Page Nos. 10032-10057).

27. In a prior action on February 25, 2019 the CAFC confirmed the validity of the '755 Patent and all of its claims, including Claim 19, rejecting Defendant's challenges to the patent's validity and enforceability. (See Surti Exhibit-6, Page Nos. 10059-10069)

28. In a prior action before the U.S. District Court for the Western District (Case No. 1:12-CV-1143), Plaintiff prevailed on October 19, 2021, on the infringement claims related to the '755 Patent against Defendant. The Court found Defendant liable for infringement and awarded Plaintiff damages in the amount of $228,000, plus interest, as detailed in (See Surti Exhibit-7, Page Nos. 10071-10072).

29. On August 15, 2023, the United States Court of Appeals for the Federal Circuit (CAFC) affirmed the judgment of the district court, thereby confirming Defendant's infringement of the '755 Patent and upholding the award of damages to Plaintiff. A copy of the CAFC's decision is attached hereto as (See Surti Exhibit-8, Page Nos. 10074-10095).

30. During the appeal, Plaintiff sought a "cease and desist" order to prevent further infringement

by Defendant. However, the CAFC denied this request, referencing Defendant's assertions that it would cease manufacturing the infringing products and continue to pay royalties for the sale of such products, both pre- and post-judgment. (See Surti Exhibit-9, Page Nos. 10097-10100)

a. Notwithstanding these representations made to the CAFC, Defendant has failed to honor its commitments. Defendant has neither ceased manufacturing the infringing products nor paid the royalties as promised. This conduct reflects Defendant's bad faith and willful disregard of its obligations to both the Court and Plaintiff.

b. Notwithstanding the CAFC's ruling and multiple written demands from Plaintiff, Defendant has failed to pay the damages awarded by the Court. Defendant's refusal to comply with the Court's judgment further exemplifies a flagrant disregard for the judicial process and Plaintiff's patent rights.

31. In an additional act of willful infringement, Defendant created new molds for the manufacture and sale of products (see figure 1-3) it knew were in violation of the '755 Patent. Despite being fully aware of the '755 Patent and its claims, Defendant deliberately chose to invest in new manufacturing tools to perpetuate its infringing activities. This conduct demonstrates Defendant's intentional and egregious disregard for Plaintiff's patent rights.

## IX. TENNESSEE-BASED BUSINESS SELLING INFRINGING PRODUCTS

32. Plaintiff has identified FleetPride Heavy Duty Parts & Services, located at 835 Fesslers Parkway, Nashville, TN 37210 ("FleetPride"), as a seller of the infringing products manufactured by Defendant Fleet Engineers Inc. (See Surti Exhibit-10, Page Nos. 10102-10103)

a. FleetPride has been offering for sale and selling the infringing products within the state of Tennessee and other locations, thereby contributing to the ongoing infringement of

the '755 Patent.

b. Defendant Fleet Engineers Inc. supplied and continue to supply the infringing products to FleetPride with full knowledge that such products infringe the '755 Patent.

c. The sale of infringing products by FleetPride further underscores the widespread and continuing nature of Defendant's infringement and the harm caused to Plaintiff's business and patent rights.

## X. TENNESSEE-BASED CUSTOMER USING INFRINGING PRODUCTS

33. Plaintiff has identified FirstFleet, Inc., a customer located at 202 Herritage Park Drive, Murfreesboro, TN 37129 "FirstFleet"), as a user of the infringing products manufactured by Defendant Fleet Engineers Inc. (See Surti Exhibit-11, Page Nos. 10105)

a. FirstFleet has been using the infringing products within the state of Tennessee, contributing to the ongoing infringement of the '755 Patent.

b. Defendant Fleet Engineers Inc. supplied the infringing products to FirstFleet with full knowledge that such products infringe the '755 Patent.

c. The use of infringing products by FirstFleet further demonstrates the widespread and ongoing nature of Defendant's infringement and the harm caused to Plaintiff's business and patent rights.

## XI. MICHAEL BUTLER OF UPS CORPORATION, USER OF FLEET'S AERO-FLAP BRAND MUD FLAPS, ENCOURAGING INFRINGEMENT

34. Plaintiff has learned that Michael Butler, an employee or representative of UPS Corporation, encouraged Defendant Fleet Engineers Inc. to "cause him (Surti) some grief." (See Surti Exhibit-12, Page Nos. 10107) Not only did he actively campaign against purchasing Surti's V-Flap brand mud flaps, but he also sought to convince UPS to permanently disregard Surti and his V-Flap brand products, despite Surti's multiple requests for consideration of his mud

flaps."

35. This statement demonstrates that Defendant's actions were not only willful but also motivated by malice. Michael Butler's encouragement further supports the claim that Defendant's infringement was deliberate and intended to harm Plaintiff, rather than arising from a good-faith dispute.

## XII. DEFENDANT'S PERJURY DURING PRIOR LITIGATION

36. In prior litigation (Case No. 1:12-CV-1143), Defendant Fleet Engineers Inc. perpetrated a fraud on the court by submitting false documents and making misrepresentations, specifically:

a. To support its claim of tortious interference with a business relationship under Michigan law, Defendant falsely identified Great Dane Company as a potential customer. (See Surti Exhibit-13, Page Nos. 10109-10113).

Defendant knew, or should have known, that this representation was false. In fact, Plaintiff, Surti, was individually marketing that Great Dane Company was distributing Surti's V-Flap brand mud flaps, which are covered by the '755 Patent. Prior to 2012, Defendant Fleet Engineers had neither manufactured nor marketed an aerodynamic mud flap, and therefore, Great Dane could not have been an existing customer of Fleet Engineers. Furthermore, Fleet Engineers entered into an indemnity agreement with Great Dane, knowing and intending to interfere with Plaintiff's business relationship and potentially divert Great Dane's business away from Plaintiff's products.

b. In reality, Defendant knew or should have known that Great Dane was a customer of Plaintiff when it entered into the "indemnity agreement," constituting an act of tortious interference with Plaintiff's business relationship. (See Surti Exhibit-14, Page Nos. 10115-10117).

c. Defendant intentionally provided inconsistent definitions of the term "vane." Initially Fleet had proposed construction of "vane as a flat or shaped plate typically used to direct fluid flow", a definition supported by Oxford English Dictionary, Merriam-Webster Dictionary, Collins English Dictionary, and many more, however, later manipulated its definition to support its claim of non-infringement. (See Surti Exhibit-15, Page Nos. 10119-10120)

d. Defendant falsely asserted that its Aero-Flap brand mud flaps do not stop water when the water impacts the bottom walls of the recess (channel) located between its sidewalls and slotted openings. (See Surti Exhibit-16, Page Nos. 10122)

e. Defendant falsely asserted that its Aero-Flap brand mud flaps divert water to the side of the mud flap, and not to the ground, contrary to the teaching of Surti's U.S. Patent No. '755. (See Surti Exhibit-17, Page Nos. 10124)

37. Defendant's false representation constitutes **perjury** and reflects its bad faith and intentional misconduct in this matter.

38. This conduct that could fall under "unclean hands doctrine" further supports Plaintiff's claims for willful infringement, enhanced damages, and attorneys' fees.

## XIII. VENDORS PROVIDING INDUCED INFRINGEMENT SERVICES

39. Plaintiff has identified two vendors, Viking Tool & Engineering and HS Inc., who are providing services to Defendant Fleet Engineers Inc. that actively induce infringement of the '755 Patent. (See Surti Exhibit-18, Page Nos. 10126-10129)

a. Viking Tool & Engineering, located at 2780 E. Colby Street, Whitehall, MI 49461, manufactures high-quality molds for the automotive, appliance, office furniture, household, and medical industries for customers like Defendant Fleet Engineers Inc., knowing that such molds are used to manufacture, sell, or distribute infringing

products.

b. HS Inc., located at 215 Lake Michigan Drive NW, Grand Rapids, MI, specializes in various types of molding and automation, building a reputation for strength, quality, and consistency. The company handles high-precision projects and delivers complete manufacturing solutions on time and within budget to customers like Defendant Fleet Engineers Inc., knowing that such services are used to promote, sell, or distribute infringing products.

40. Both Viking Tool & Engineering and HS Inc. were informed by Surti and thus had actual knowledge of the '755 Patent and its claims. They specifically intended to assist Defendant Fleet Engineers Inc. in infringing the '755 Patent. (See Surti Exhibit-19, Page Nos. 10131-10134)

41. By providing these services under the direction of Defendant Fleet Engineers Inc., Viking Tool & Engineering and HS Inc. have actively induced, and continue to induce, Defendant Fleet Engineers Inc. to infringe the '755 Patent, in violation of 35 U.S.C. § 271(b).

## XIV. CLAIMS FOR RELIEF

### Count I: Direct Patent Infringement (35 U.S.C. § 271(a))

42. Plaintiff hereby repeats and incorporates by reference the allegations set forth in paragraphs 1 through 47 as though fully stated herein.

43. Defendant has directly infringed, and continues to infringe, one or more claims of the '755 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing infringing products without Plaintiff's authorization. These products embody the claims of the '755 reissue Patent and the originally issued U.S. Patent No. 8,146,949, in this judicial district and throughout the United States, and will continue to do so unless enjoined by this Court.

44. Defendant's products infringe the '755 Patent both literally and under the doctrine of equivalents, as they perform substantially the same function in substantially the same way to achieve substantially the same result as the patented invention.

45. Defendant's infringement has caused, and will continue to cause, Plaintiff irreparable harm, entitling Plaintiff to injunctive relief pursuant to 35 U.S.C. § 283.

46. Plaintiff has suffered, and will continue to suffer, substantial monetary damages as a result of Defendant's infringement, entitling Plaintiff to damages sufficient to compensate for the infringement, but in no event less than a reasonable royalty, in accordance with 35 U.S.C. § 284.

**Count II: Willful Patent Infringement**

47. Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 52 as though fully stated herein.

48. Defendant's infringement of the '755 Patent has been willful, deliberate, and in reckless disregard of Plaintiff's patent rights. Despite having actual knowledge of the '755 Patent and its claims—particularly Claim 19, which was not allowed as a claim in dispute due to procedural error and bias by the Court—Defendant continued to infringe, with an objectively high likelihood that its actions constituted infringement.

49. As a result of Defendant's willful infringement, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and attorneys' fees under 35 U.S.C. § 285.

**Count III: Induced Patent Infringement (35 U.S.C. § 271(b))**

50. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

51. Defendant has actively induced and continues to induce others to infringe the '755 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally encouraging, aiding, or causing

third parties to make, use, sell, offer for sale, or import infringing products.

52. Defendant had actual knowledge of the '755 Patent and its claims, and it specifically intended to cause infringement by third parties, including Viking Tool & Engineering, HS Inc, FleetPride, and FirstFleet, Tennessee Customers.

53. Defendant's inducement of infringement has caused and will continue to cause Plaintiff irreparable harm and substantial monetary damages.

**Count IV: Contributory Patent Infringement (35 U.S.C. § 271(c))**

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

55. Defendant has contributorily infringed and continues to contributorily infringe the '755 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, or importing components or materials that are specially made or adapted for use in infringing the '755 Patent, and that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

56. Defendant had actual knowledge of the '755 Patent and its claims, and it knew that the components or materials it supplied would be used to infringe the '755 Patent.

57. Defendant's contributory infringement has caused and will continue to cause Plaintiff irreparable harm and substantial monetary damages.

**Count V: Tortious Interference with Business Relationship**

58. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

59. Plaintiff individually had established and maintained valuable business relationships with Greta Dane Trailers.

60. Defendant, with knowledge of Plaintiff's business relationship with Great Dane Trailers,

intentionally and unjustifiably interfered with this relationship by entering into an indemnity agreement with Great Dane Trailers, knowing that Great Dane was a customer of Plaintiff, Surti. This interference was designed to entice Great Dane away from Plaintiff's products, undermining Plaintiff's business and causing harm to the established relationship between Plaintiff and Great Dane.

61. Defendant, knowing Plaintiff had valuable business relationships, intentionally and without justification interfered with those relationships. Defendant did this by submitting false documents to support its own claim of "Tortious Interference in Business Relations" under Michigan law. Instead of being truthful with the Michigan court, Defendant misrepresented facts, resulting in an unfair ruling in Defendant's favor. Furthermore, the Michigan court's bias, combined with Defendant's fraudulent conduct (including perjury), prevented Plaintiff from discovering and timely filing its own tortious interference claim.

62. Because Defendant's wrongful actions—submitting false documents and intentionally concealing key facts—prevented Plaintiff from learning about the need for this claim within Tennessee's statute of limitations period, Plaintiff respectfully requests the Court waive the applicable statute of limitations. Allowing Plaintiff to proceed with the tortious interference claim is necessary to ensure justice.

63. Defendant's interference was motivated by malice or an improper purpose, including, but not limited to, harming Plaintiff's business and gaining an unfair competitive advantage.

64. As a direct and proximate result of Defendant's tortious interference, Plaintiff has suffered significant damages, including, but not limited to, lost profits, harm to reputation, and other economic losses.

## XV. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in Plaintiff's

favor and against Defendant and grant the following relief:

a. A declaration that Defendant has directly infringed, contributorily infringed, and induced infringement of one or more claims of the '755 reissue Patent;

b. A permanent injunction enjoining Defendant, along with its officers, agents, servants, employees, and all persons in active concert or participation with them, from further infringing the '755 Patent;

c. An award of damages sufficient to compensate Plaintiff for Defendant's infringement, including enhanced damages for willful infringement;

d. An order requiring Defendant to pay the damages previously awarded, as affirmed by the CAFC, plus interest;

e. An award of damages for tortious interference with Plaintiff's business relationships;

f. An award of pre-judgment and post-judgment interest on the damages awarded;

g. An award of attorneys' fees and costs incurred in this action; and

h. Such other and further relief as the Court deems just and proper.

## XVI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Tarun N. Surti
Tarun N Surti, *Pro Se for Plaintiff*
5928 Westheimer Drive
Brentwood, Tennessee 37027
615-8112-6164
vflaps@gmail.com

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of February 2025, a copy of the following document was filed through the Court's electronic filing system and served through that system upon all parties who are registered for service within that system. Those parties set forth below were served via email and US Postal services:

G. Thomas Williams (P53734)
Andrea R. Jacobson, Sr. Litigation Paralegal
Attorneys for Plaintiff
MCGARRY BAIR PC
45 Ottawa Ave SW - Suite 700
Grand Rapids, Michigan 49503
Tel: (616) 742-3538
G. Thomas Williams gtw@mcgarrybair.com
Andrea R. Jacobson arj@mcgarrybair.com

Attn: Wesley K. Eklund
Fleet Engineers Inc.
Division of Tramec Sloan
1800 E Keating Ave
Muskegon MI 49442
Tel: (800) 333-7890
Wesley Eklund
weklund@fleetengineers.com

/s/ Tarun N. Surti
TARUN N. SURTI